FILED
CLERK, U.S. DISTRICT COURT

JUL 1 5 2005

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority  
Send  
Enter  
Closed  
JS-5/JS-6 ____  
JS-2/JS-3 ____  
Scan Only____

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CHERE HERRON, | No. CV 03-1993-CW |
| Plaintiff, | DECISION AND ORDER |
| v. | |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | |
| Defendant. | |

The parties have consented, under 28 U.S.C. §636(c), to the jurisdiction of the undersigned Magistrate Judge.  Plaintiff seeks review of the Commissioner's denial of disability benefits. As discussed below, the court finds that the Commissioner's decision should be reversed and this matter remanded for further proceedings.

## I. BACKGROUND

Plaintiff Chere L. Herron was born on June 22, 1958, and was 43 years old at the time of her administrative hearing. [Joint Stipulation ("JS") at 3; Administrative Record ("AR") at 17, 21,

1



DOCKETED ON CM

JUL 1 8 2005

BY _____



27, 45, 61, 72, 114, 167.]  She has a high school education, some college experience, and vocationally relevant past work experience as a home attendant.  [AR at 17, 21, 27, 77, 85.] Plaintiff claims her disability began on December 14, 2000, due to high blood pressure and arthritis.  [JS at 2; AR at 17, 69-76, Exhibits 1-3E.]

## II.  PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for supplemental security income benefits on December 15, 2000.  [JS at 2; AR at 17.]  On March 2, 2001, after plaintiff's application was denied both initially and on reconsideration, she requested an administrative hearing.  [JS at 2; AR at 11-13.]  A hearing was held on December 11, 2001, before Administrative Law Judge ("ALJ") Honorable Earl J. Waits, at which plaintiff (who appeared with counsel) and a vocational expert, Heidi Paul, testified. [JS at 2; AR at 17, 57, Transcript 26-44.]  ALJ Waits denied benefits on March 20, 2002.  [JS at 2; AR, Decision at 14-21.]  The Appeals Council denied review on January 31, 2003, whereupon the ALJ's decision became the Commissioner's final decision.  [JS at 2; AR at 5-6.]

## III. PROCEEDINGS IN THIS COURT

Plaintiff filed the present complaint on March 31, 2003.  On August 1, 2003, defendant answered and filed plaintiff's Administrative Record.  On December 1, 2003 the parties filed their Joint Stipulation identifying both non-disputed and disputed issues, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

2

1

## IV.   **STANDARD OF REVIEW**

2   Under 42 U.S.C. § 405(g), a district court may review the
3   Commissioner's decision to deny benefits.  The Commissioner's (or
4   ALJ's) findings and decision should be upheld if they are free of
5   legal error and supported by substantial evidence.  However, if
6   the court determines that a finding is based on legal error or is
7   not supported by substantial evidence in the record, the court
8   may reject the finding and set aside the decision to deny
9   benefits.   See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th
10  Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir.
11  2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001);
12  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v.
13  Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80
14  F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521,
15  523 (9th Cir. 1995)(per curiam).

16  "Substantial evidence is more than a scintilla, but less
17  than a preponderance."  Reddick, 157 F.3d at 720.  It is
18  "relevant evidence which a reasonable person might accept as
19  adequate to support a conclusion."  Id.  To determine whether
20  substantial evidence supports a finding, a court must review the
21  administrative record as a whole, "weighing both the evidence
22  that supports and the evidence that detracts from the
23  Commissioner's conclusion."  Id.  "If the evidence can reasonably
24  support either affirming or reversing," the reviewing court "may
25  not substitute its judgment" for that of the Commissioner.
26  Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at
27  1162.

28

# V. **DISCUSSION**

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least 12 months.  Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. §423(d)(1)(A).

## A.   THE FIVE-STEP EVALUATION

Disability claims are evaluated using a five step test:

Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996; see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete the further steps.  Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520.

"Severe" (at step two) means an impairment or combination of impairments that significantly limits physical or mental ability to perform basic work activities.  Step two is a de minimis

4

inquiry to weed out nonmeritorious claims early in the analysis. See Bowen v. Yuckert, 482 U.S. at 148, 153-154; 20 C.F.R. §§ 404.1520(c). "Only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. Bowen v. Yuckert, 482 U.S. at 158; see also Smolen, 80 F.3d at 1290.

To "meet" a listing (at step three), a claimant must meet each characteristic of a listed impairment; to "equal" a listing a claimant must show symptoms, signs, and laboratory findings that are at least equal in severity and duration to characteristics of a relevant listing, i.e., of the listed impairment "most like" the claimant's impairment. Tackett, 180 F.3d at 1099; 20 C.F.R. § 404.1526. If a claimant has multiple impairments, no one of which meets or equals a listing, the collective symptoms, signs and laboratory findings of all impairments should be evaluated to determine whether, collectively, they meet or equal any listing. Tackett, 180 F.3d at 1099; 20 C.F.R. § 404.1526.

Steps four and five involve assessing residual functional capacity ("RFC"), i.e., what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959;

5

1 | Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20

2 | C.F.R. § 404.1569a(c).

3 | A claimant has the burden of proof at steps one through

4 | four, subject to the presumption that Social Security hearings

5 | are non-adversarial, and to the Commissioner's affirmative duty

6 | to assist the claimant in fully developing the record, even if

7 | the claimant is represented by counsel. Tackett, 180 F.3d at

8 | 1098 and n.3; Smolen, 80 F.3d at 1288. If the claimant's burden

9 | is met, a prima facie case of disability is made, and the burden

10 | shifts to the Commissioner (at step five) to prove that,

11 | considering residual functional capacity, age, education, and

12 | work experience, a claimant can perform other work existing in

13 | significant numbers. Tackett, 180F.3d at 1098, 1100; Reddick,

14 | 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

15 | To meet the Commissioner's burdent at step five, an ALJ may

16 | use the "Grids," i.e., the Medical-Vocational Guidelines at 20

17 | C.F.R., Part 404, Subpart P, Appendix 2. Osenbrock, 240 f.3d at

18 | 1162; Tackett, 180 F.3d at 1100-1101. An ALJ may rely on the

19 | Grids to find a claimant "disabled" based on strength limitations

20 | and vocational factors alone, even if the claimant had both

21 | exertional and nonexertional limitations. Cooper, 880 F.2d at

22 | 1155-1156; 20 C.F. R. §§ 404.1569a(d) and 416.969a(d); "Grids" §

23 | 200.00(e)(2). On the other hand, an ALJ may rely on the Grids

24 | alone to find a claimant "not disabled" only if the Grids

25 | completely and accurately represent the claimant's limiations,

26 | and the claimant can perform the full range of jobs in a given

27 | category (e.g., sedentary, light or medium work). Aukland, 257

28 | F.3d at 1035; Tackett, 180 F.3d at 1101. Because the Grids

6

1  address only exertional limitations, significant nonexertional
2  limitations may preclude relying on the Grids alone to deny
3  benefits at step five.  Holohan v. Massanari, 246 F.3d 1195, 1208
4  (9th Cir. 2001); Tackett, 180 F.3d at 1103, Reddick, 157 F.3d at
5  729.

6      When the Grids alone do not suffice for reaching a step five
7  decision, an ALJ may use the Grids as a "framework," but may also
8  be required to consider evidence from a vocational expert ("VE").
9  Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Moore v.
10 Apfel, 216 F.3d 846, 870 (9th Cir. 2000); see also 20 C.F.R. §§
11 404.1569 and 416.969.  If an ALJ relies on VE testimony to deny
12 benefits, "the VE must identify a specific job or jobs in the
13 national economy having requirements that the claimant's physical
14 and mental abilities and vocational qualifications would
15 satisfy."  Osenbrock, 240 F.3d at 1162-1163.

16 **B.   THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

17      ALJ Waits found that plaintiff had not engaged in
18 substantial gainful activity since the onset of disability in
19 December 2000 (step one), that plaintiff had arthritis which
20 constituted a severe impairment, and hypertension which was not
21 severe (step two), but that she did not have an impairment or
22 combination of impairments severe enough to meet or equal a
23 listed impairment (step three).  [AR at 17-18, Findings Nos. 1-
24 3.]  The ALJ based the above determination in part on the
25 examination results and opinions of treating and consulting
26 physicians which, although indicating severe arthritis, do "not
27 support the claimant's allegations of pain and limitations to the
28 degree that she testified too."  [Id. at 18, Finding No.4.]

7

1  Plaintiff was found to have vocationally relevant past work
2  experience as a home attendant; however, she was unable to
3  continue to perform the duties required for that employment (step
4  four).  [Id. at 17, 20, Finding No. 6.]

5     The ALJ found that plaintiff retained the RFC to perform
6  sedentary work that did not involve any repetitive or prolonged
7  fine manipulations or pushing or pulling, and that allowed for a
8  sit/stand option.  [Id. at 20, Finding Nos. 5, 7.]  Relying on
9  the VE's testimony, the ALJ found that, despite her exertional
10 limitations, plaintiff was able to perform the sedentary jobs of
11 charge account clerk and call out operator, and that such jobs
12 existed in significant numbers in both the local and national
13 economies. [Id., Finding No. 11.]  Using the Grids as a
14 "framework", the ALJ found that Rules 404.1520(f) and 416.920(f)
15 applied, and that, therefore, plaintiff was not disabled as
16 defined in the Social Security Act (step five).  [Id., Finding
17 No. 12.]

18 **C. POINTS AT ISSUE**

19     In the present case, the parties, in their joint
20 stipulation, indicate that the following issue is disputed:
21 whether the ALJ properly considered plaintiff's subjective
22 symptom testimony in assessing her residual functional capacity.

23     Plaintiff contends generally that the ALJ failed to properly
24 evaluate her subjective testimony as to her arthritis pain, and
25 argues specifically that plaintiff should be found disabled at
26 step five because the severity of her arthritis symptoms is such
27 that there is no job existing in adequate numbers in the national
28 economy that plaintiff could do.  At the hearing, plaintiff

testified that she had pain in her back, left leg, right knee, middle finger of her left hand, right wrist, right hip and right foot. [AR at 28-32.] She stated that she had "flare-ups", which cause the joints in her body to become "very, very sore" and made it "very difficult to do normal things that a person does." [JS at 6; AR at 30.] Plaintiff testified that these flare-ups occurred without notice several times a month and lasted for anywhere from a single day to a number of weeks or even months. [AR at 31.] During the hearing, plaintiff was asked to compare her mobility levels during a flare-up and a normal period. Plaintiff stated that during a flare-up she could walk or stand for 5 to 10 minutes and sit for 30 minutes, whereas, without a flare-up, she could walk, stand or sit for 20 to 30 minutes. [JS at 6-7; AR at 35-37.]

Based on plaintiff's hearing testimony, the ALJ presented three hypotheticals to VE Heidi Paul. The first required light work, with limitations on repetitive or prolonged fine manipulations and pushing/pulling activities, and included lifting and unlimited siting, standing and walking. [Id. at 40.] The second hypothetical was limited to sedentary work, but was otherwise the same as the first. [Id. at 41.] In response to the first two hypotheticals, the VE testified that there were a number of jobs in the national economy, such as a commercial, television or film extra, information clerk, investigation dealer accounts and secretary (added in response to the second hypothetical) that a person with the specified abilities and limitations could perform. [Id.] The third hypothetical the ALJ presented was limited to sedentary work with a sit/stand option;

however, in all other respects this hypothetical was the same as
the previous two.  The VE testified that the same jobs she had
already indicated would apply for this hypothetical.[1]

        Following the ALJ's line of questioning, plaintiff's counsel
presented a fourth hypothetical to the VE. Here, hypothetical
three, which was limited to sedentary work and included a
sit/stand option, was further limited by flare-ups that would
cause the person to be absent from work three times a month. [Id.
at 42-43.] In response, the VE testified that a such a person
"would not be able to perform any jobs that exist in significant
numbers in the national economy." [Id. at 43.]

        In his decision, the ALJ rejected plaintiff's subjective
symptom testimony, finding her testimony regarding her physical
capacity, as it related to work, not to be credible. [Id. at 19.]
By discrediting plaintiff's testimony, the ALJ implicitly
rejected both plaintiff's claims of flare-ups and the fourth
hypothetical presented to the VE.  Plaintiff contends that the
ALJ did not adequately articulate his reasons for rejecting
plaintiff's testimony. [JS at 7, 10.]  On the contrary, defendant
argues that the ALJ's credibility determination was proper, as it
was based on an accurate assessment of the testimony and evidence
and was articulated with a specific and legitimate rationale.
[JS at 10-11.]

        Both parties agree that the ALJ properly and throughly

---

[1] The VE testified that there were a few other jobs that
would apply to the third hypothetical, but because they existed
in limited numbers, the ALJ did not require the VE to provide the
names, corresponding numbers, or statistics on available
positions in the local or national economies.

1 | articulated the legal standard required by the Social Security
2 | Administration for consideration of subjective symptom testimony.
3 | Once a disability claimant produces evidence of an underlying
4 | physical or mental impairment that is reasonably likely to be the
5 | source of her subjective symptoms, the adjudicator is required to
6 | consider all subjective testimony as to the severity of the
7 | symptoms.  Lester, 81 F.3d at 834; Bunnell v. Sullivan, 947 F.2d
8 | 341, 345 (9th Cir. 1991) (en banc); see also 20 C. F. R. §§
9 | 404.1529(a), 416.929(a) (explaining how pain and other symptoms
10 | are evaluated). The decision even includes an entire paragraph
11 | devoted to the specific factors that an ALJ should consider when
12 | undergoing such an assessment. [JS at 19.][2]

13 |     If the claimant produces objective evidence of any

14 |

_____

15 | [2]In evaluating subjective symptom testimony, the ALJ must
16 | consider "all of the evidence presented," including the following factors:  (1) the claimant's daily activities; (2) the location,
17 | duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement,
18 | activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication;
19 | (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve
20 | pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms.  See 20
21 | C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p (clarifying the Commissioner's policy regarding the evaluation of pain and
22 | other symptoms).  The ALJ also may employ "ordinary techniques of
23 | credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies
24 | within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by
25 | the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12)
26 | information from physicians, relatives, or friends concerning the
27 | nature, severity, and effect of the claimant's symptoms.  See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997);
28 | Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

11

1 | impairment(s) that would produce the alleged symptoms or pain and
2 | no evidence of malingering is presented, the ALJ may then
3 | disregard the subjective testimony he deems to be not credible.
4 | Smolen, 80 F.3d at 1282, 1284; Dodrill v. Shalala, 12 F.3d
5 | 915,917 (9th Cir. 1993);  However, the ALJ must provide clear and
6 | convincing reason supported by specific findings for the
7 | rejection.  Dodrill,12 F.3d at 917, Tonapetyan, 242 F. 3d at
8 | 1148; see also Holohan v. Massanari, 246 F.3d 1195, 1208 (9th
9 | Cir. 2001) (ALJ may not dismiss a claimant's subjective testimony
10 | without providing "clear and convincing reasons").

11 | Although the ALJ properly articulated the legal standard,
12 | the issue centers on whether the ALJ's application of the law to
13 | the facts of this case was sufficient.  Despite a lengthy
14 | discussion of the legal standard, all the ALJ offered to justify
15 | and support his credibility determination is the following four
16 | sentence paragraph:

> After evaluating the claimant's alleged symptoms and
> limitations in light of the above criteria, I find that
> the claimant is not credible to the degree that she is
> incapable of performing work-related activities.  The
> claimant does not receive regular ongoing medical care
> and has not always been compliant with taking her
> hypertensive medications.  Her blood pressure clearly
> can be controlled with medications, and there is no
> evidence of any disabling side effects.  She admitted
> in her testimony that the walker and wrist splint she
> uses were not prescribed. [JS at 19-20.]

23 | Viewed as a whole, the record makes clear that this justification
24 | is insufficient to meet the requirement of articulating clear
25 | findings and rationale for a credibility determination.

26 | The ALJ identified five reasons for rejecting plaintiff's
27 | credibility: (1)non-compliance with taking hypertensive
28 | medications, (2) control of hypertension through medication, (3)

12

absence of evidence of disabling side effects from medications, (4) use of an un-prescribed walker and wrist splint, and (5) lack of regular medical care.  Because plaintiff's subjective symptom testimony primarily dealt with the severity of her arthritis and the frequence of her "flare-ups," and because plaintiff does not claim that uncontrolled high blood pressure is the primary cause of her disability, the first three reasons the ALJ provided for his credibility determination are largely irrelevant to the inquiry.  In any event, they are not well-founded.  The ALJ cites to plaintiff's inconsistency in taking her blood pressure medication, referencing two medical visits at which plaintiff requested and received refills when she had run out of her medication. [AR at 18; see AR at 155-156.] However, this does not reasonably support an inference that plaintiff was non-compliant, nor does the fact that medication may have worked to keep plaintiff's blood pressure under control reasonably suggest that plaintiff was not credible in describing relatively minor ongoing symptoms of this problem. [See AR at 35.] Similarly, although plaintiff testified to general side effects she suffered (i.e., Motrin upset her stomach and her hypertensive medication made her sick and tired [AR at 35]), plaintiff did not claim that the side effects from her medications caused her disability, nor did she exaggerate their severity.  The ALJ's rationale for rejecting plaintiff's credibility based on an absence of evidence of side-effects is therefore unconvincing.

The remaining two reasons cited by the ALJ are more relevant, but not more persuasive.  The ALJ noted plaintiff's use of a walker and wrist splint, but apparently rejected this

13

testimony simply because these aids were not prescribed.
However, there is no evidence to suggest that use of these items
must be prescribed rather than simply purchased at any drugstore
or market.  Both explicit and implicit in plaintiff's testimony
is the notion that she used the walker and splint in an attempt
to ameliorate her pain, but plaintiff did not make any
exaggerated claims as to the use of these aids. [AR at 32-33.]
Additionally, plaintiff testified that her physicians were aware
of and unopposed to the use of these un-prescribed aids. [Id.]
Nothing in these circumstances reasonably reflects negatively on
plaintiff's credibility.

        Plaintiff's lack of regular ongoing medical care serves as
the fifth reason the ALJ cited for his credibility determination.
This rationale, although again relevant, is not persuasive for
two reasons.  First, the record contains ample evidence of
plaintiff's medical treatment for both high blood pressure and
arthritis.  [AR, Exhibits 1F, 6F, and AC-2.]  Exhibits 1F and AC-
2 reflect plaintiff's treatment from Cedars Sinai Hospital in
January 2000 and April 2002 respectively.  Exhibit 6F, dated
September 22, 2001, consists of signed records of treatment.
Although there are obvious gaps in care, in her testimony,
plaintiff provided a reason for the absence of consistent medical
care, namely the loss of her medical insurance resulting from her
lack of employment. [AR at 33-34.] See Regennitter v.
Commissioner of Social Security, 166 F.3d 294, 1296-97 (9th Cir.
1999)(proscribing rejection of subjective complaints based on
lack of treatment where record establishes claimant could not

1  afford medical care).[3]

2      Accordingly, the ALJ's general annunciation rejecting
3  plaintiff's subjective testimony is not a clear and convincing
4  statement of specific reasons for the adverse credibility
5  determination in this case.  In Varney v. Sec'y of Health and
6  Human Servs., the Ninth Circuit adopted the Eleventh Circuit's
7  rule that where the Commissioner "fails to articulate reasons for
8  refusing to credit a claimant's subjective pain testimony, then
9  the [Commissioner], as a matter of law, has accepted that
10 testimony as true."  Varney v. Sec'y of Health and Human Servs.,
11 859 F.2d 1396, 1398 (9th Cir. 1987), quoting Hale v. Bowen, 831
12 F.2d 1007, 1012 (11th Cir. 1987).  Here, the ALJ's failure
13 properly to consider plaintiff's subjective symptom testimony and
14 adequately to articulate his basis for rejecting it constitute
15 reversible error.  Because the reasons provided are either
16 irrelevant to the issue presented or inadequately supported, and
17 because the record does not otherwise raise substantial questions
18 regarding plaintiff's credibility, this court finds plaintiff's
19 subjective symptom testimony, as to arthritis pain in her back
20 left leg and the middle finger of her left hand, right wrist, hip

21

22      [3] Plaintiff testified that, at the time of the hearing, she
was receiving monthly care for her medical conditions. [Id. at
23 33-34.]  Defendant argues that plaintiff's lack of medical
treatment immediately after the claimed date of disability,
24 December 14, 2000, and her later ability to secure medical care,
indicates that her claimed symptoms were not as severe or
25 disabling as she claimed in her testimony. [JS at 12.]  This
inference is simply unreasonable.  In the absence of more
26 information, the mere fact that plaintiff ultimately found a
source of care despite her lack of medical insurance does not
27 indicate that she could have done so earlier, or that her failure
28 to do so was due to the absence of severe symptoms.

15

1   and foot, to be credible. Cf. Connett v. Barenhart, 340 F.3d 871,
2   876 (9th Cir. 2003)(holding that reversing Court has same
3   flexibility in crediting claimant's testimony of substantial
4   questions regarding credibility remain).

5
6   **D.   REMAND FOR FURTHER PROCEEDINGS**

7        The decision whether to remand for further proceedings is
8   within a district court's discretion. Harman v. Apfel, 211 F.3d
9   1172, 1175-1178 (9th Cir. 2000). Where no useful purpose would
10  be served by further proceedings, or where the record has been
11  fully developed, it is appropriate to exercise this discretion to
12  direct an immediate award of benefits. Id. at 1179 (decision
13  whether to remand for further proceedings turns upon their likely
14  utility). However, where there are outstanding issues that must
15  be resolved before a determination can be made, and it is not
16  clear from the record that the ALJ would be required to find the
17  claimant disabled if all the evidence were properly evaluated,
18  remand is appropriate. Id.

19       Despite having credited plaintiff's subjective symptom
20  testimony, supra, a question remains as to whether the ALJ would
21  be required to find plaintiff disabled at step five based on the
22  VE's testimony. The fourth hypothetical's supposition about
23  flare-ups causing three absences from work a month, although
24  potentially appropriate, is not clearly supported by plaintiff's
25  testimony or the record. Although plaintiff testified to the
26  intensity of her "flare-ups," the record is silent as to the
27  frequency of flare-ups severe enough to prevent plaintiff from
28  going to work. It appears that the existence or lack thereof of

16

1  jobs in the national economy may hinge on the specifics of
2  hypothetical four, as compared to the other hypotheticals posed
3  to the VE, consequently, further inquiry into the number, nature
4  and duration of plaintiff's severe flare-ups in relation to her
5  physical ability to work is necessary.  Because the above
6  information appears central to the final decision in this case,
7  further proceedings are required to develop the record on this
8  issue, and remand is appropriate.  Cf. Benecke v. Barnhart, 379
9  F.3d 587, 594-96 (holding that remand for further proceedings is
10 not warranted where, despite absence of precise VE testimony,
11 claimant's entitlement to benefits is otherwise clear from the
12 record).

13                        **VI.  ORDERS**

14     Accordingly, **IT IS ORDERED** that:

15     1.   The decision of the Commissioner is **REVERSED**.

16     2.   This action is **REMANDED** to defendant, pursuant to
17 Sentence Four of 42 U.S.C. § 405(g), for further proceedings as
18 discussed above.

19     3.   The Clerk of the Court shall serve this Decision and
20 Order and the Judgment herein on all parties or counsel.

21

22 DATED:  July 15, 2005

23

24                              _____
                                     CARLA M. WOEHRLE
25                              United States Magistrate Judge

26

27

28

                              17